| | |
|---|---|
| TRAVIS MORGAN,<br><br>              Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Officially as Acting Commissioner of the Social Security Administration,<br><br>              Defendant. | Case No.: 3:18-cv-00380-LAB-KSC<br><br>**REPORT & RECOMMENDATION** |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Plaintiff Travis Morgan seeks judicial review of defendant Acting Social Security Administration ("SSA") Commissioner Nancy A. Berryhill's determination that he was disbursed disability benefits to which he was not entitled and that he was not entitled to

waiver of repayment.[1] Doc. No. 1, p. 2.[2] The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court recommends plaintiff's motion for summary judgment be GRANTED IN PART and DENIED IN PART, defendant's cross-motion for summary judgment be DENIED, and the case be remanded for further administrative proceedings.

## I. BACKGROUND

Plaintiff was born with Usher Syndrome-Type II, a genetic based condition characterized by progressive hearing and vision loss. Doc. No. 28, p. 5. When his condition had deteriorated to the point he could no longer work, he applied for Social Security disability benefits. His application was made on November 9, 2007, and he began receiving disability insurance benefits on January 26, 2008. Administrative Record ("AR"), pp. 14

---

[1] In his Motion, plaintiff refers to another case he filed against defendant as having been "merged" with this one. Doc. No. 28, p.5 ¶ 10. Plaintiff is mistaken. These two cases have not been consolidated or "merged" for all purposes as plaintiff asserts.

The record includes a Report of Clerk and Order of Transfer Pursuant to 'Low-Number' Rule, which states that Case No. 18cv380-WQH(NLS) (*i.e.*, the disability case) and Case No. 17cv2227-LAB(KSC) (*i.e.*, the FOIA case) **"are NOT CONSOLIDATED at this point; all pleadings must still be filed separately in each case."** [Doc. No. 16, at p. 1 (emphasis added).] The Order transfers Case No. 18cv380-WQH(NLS) to the dockets of District Judge Larry Alan Burns and Magistrate Judge Karen S. Crawford, who were previously assigned to Case No. 17cv2227-LAB(KSC) (*i.e.*, the "low number" case). Case No. 18cv380-WQH(NLS) was transferred and re-numbered as 18cv380-LAB(KSC), because the cases are "related" (*i.e.*, they involve the same parties and appeared at the time the transfer was made to possibly involve common issues). This transfer was made so that both cases could be considered by the same District Judge and Magistrate Judge. As noted above, however, the cases have not been consolidated to be handled as a single case. The disability case (18cv380-LAB(KSC)) seeks judicial review of the SSA's denial of disability benefits to plaintiff, and the FOIA case (17cv2227-LAB(KSC)) seeks an order compelling production of documents maintained in the SSA's administrative records that plaintiff believes he needs to challenge the denial of disability benefits by the SSA.

[2] Plaintiff's page numbering for his Complaint and Motion varies from the numbers assigned by the Court's ECF system. The Court's citation to page numbers for these documents refers to the page numbers assigned by ECF.

& 27. Plaintiff collected the benefits off and on until late 2015.[3] Thereafter, the Social Security Administration determined plaintiff had worked during certain periods of time and, therefore, was overpaid benefits *Id*., pp. 66-68, 97-101, 107, and proposed imposing certain penalties for plaintiff's failure to disclose his work activity and income *Id*., pp. 70-73, 80-82, 90-91. On December 16, 2015, a Notice of Proposed Decision was issued, in which plaintiff was informed defendant intended to terminate plaintiff's benefits retroactively, based on information received that plaintiff had earned income starting in January 2008 and, thus, had returned to substantial gainful employment within one year of his alleged disability onset date. *Id*., pp. 124-27. Documentation provided by the Internal Revenue Service ("IRS") to defendant indicated that plaintiff reported he had self-employment earnings in 2008 and 2009. *Id*., pp. 135-44. The following month, on January 19, 2016, defendant reopened and revised the prior disability determination, finding plaintiff was not qualified for any disability insurance benefits because he had not had a continual period of 12 months during which he did not perform substantial gainful employment. *Id*., pp. 152, 157-59. The amount of overpayment was calculated to be $144,359.50 for the time period May 2008 through January 2016. *Id*., pp. 172-76.

Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held on August 4, 2016, before ALJ Keith Dietterle. *Id*., pp. 15, 666-88. Prior to the hearing, plaintiff submitted evidence in support of his case and he also testified at the hearing. *Id*., pp. 198-217, 282-569; 587-609, 666-688. In a decision dated September 9, 2016, the ALJ concurred with the decision to reopen and terminate plaintiff's benefit claim, and found that plaintiff was not entitled to a waiver of the overpayment because he was at fault in causing it. *Id*., pp. 11-18. Thereafter, plaintiff submitted an additional statement

---

[3] See e.g. AR, pp. 63-65, ceasing benefits for January through September 2010, due to plaintiff engaging in substantial gainful employment through a Trial Work Period.

and new evidence he identified as being material to the ALJ's decision.[4] *Id.* pp. 9-10; 610-665. On December 19, 2017, defendant accepted the additional submission into the record and also denied plaintiff's request to review the ALJ's decision. *Id.*, pp. 5-8. Plaintiff then filed this action for judicial review, pursuant to 42 U.S.C. § 405(g). Doc. No. 1.

## II. THE ADMINISTRATIVE HEARING

At the hearing plaintiff declined the opportunity to retain counsel for the administrative hearing. AR, p. 669. The ALJ advised plaintiff the issues under consideration were: 1) whether good cause existed to reopen and terminate plaintiff's application for benefits; 2) whether plaintiff engaged in substantial gainful activity for a period of 12 consecutive months; 3) whether plaintiff was without fault in the overpayment and, if so, would recovery defeat the purposes of Title II or be counter to equitable considerations or good conscience; and 4) whether the overpayment could be waived. *Id.*, p. 671.

Plaintiff testified that he was employed by Lanbin Incorporated through most of 2007, but was not earning any income by November, when he applied for disability benefits. *Id.*, pp. 673-74. He denied having any earnings in 2008 or 2009 and stated that reports that he earned $55,000 in 2008 and $59,000 in 2009 were "fabricated." *Id.*, pp. 674-75. At that time, his then-wife, Karen Morgan, was self-employed and owned and operated two businesses, for one of which plaintiff provided IT "guidance," but says he was not paid, and the other with which he had no involvement. *Id.*, pp. 678-80. He speculated that

---

[4] Where, as here, the Appeals Council considered additional material but denied review, the additional material becomes part of the Administrative Record for purposes of the Court's analysis. *Warner v. Astrue*, 859 F.Supp.2d 1107 (C.D. Cal. 2012); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir.1993) ("although the Appeals Council declined to review the decision of the ALJ, it reached this ruling after considering the case on the merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to provide a basis for changing the hearing decision. For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council") (citations and quotations omitted); *Penny v. Sullivan*, 2 F.3d 953, 957 n. 7 (9th Cir.1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

the self-employment income reported by the IRS must have reflected his wife's income, with whom he had filed joint tax returns for those years. *Id*., pp. 680-681; 685-86. He could not recall who prepared his income tax returns and no longer had copies of his filings for either year. *Id*., pp. 675-76. He said he had not prepared an updated or amended tax return or requested the IRS update its records to reflect that he did not have income in 2008 or 2009 because the IRS will not accept an amended return more than three years after the tax year. *Id*., p. 676.

## III. THE ALJ DECISION

After considering the record, the ALJ made the following findings:

**1. The claimant was overpaid benefits for $144,359.50 during the period May 1, 2008, to January 1, 2016 (20 CFR 404.504).**

After his award of disability benefits commencing on January 26, 2008, the claimant continued to work. The claimant's earnings record discloses that the claimant had self-employment earnings of $55,132.00 in 2008 and $58,767.00 in 2009 (Exhibit 27/8).

The claimant has vigorously denied the veracity of the earnings attributed to him on his social security number since November 2007 (Exhibits 67, 78, 79, 80). However, this is undermined by acknowledgment in the record that he has helped Laura Morgan, his ex-wife, with her business, Temecula Valley Computers. In a letter dated July 31, 2014, he acknowledged that he had "contributed my knowledge to helping [his ex-wife] establish this business and hire qualified individuals to perform the tasks required to sustain this business" (Exhibit 11/2). Further, he has not produced any evidence to show that there was an error on his earnings record. He stated his intention to obtain help from a tax professional to amend his 2008 and 2009 tax returns (Exhibit 40/2). However, he has failed to do so as indicated by the IRS (Exhibits 25 and 27).

The uncontroverted evidence in the record reveals that the claimant was self-employed in 2008 and 2009 and his earnings constituted substantial gainful activity. The work activity resulted in an overpayment of disability insurance benefits from May 2008 through January 2016 for $144,359.50.

**2. The claimant was at fault in causing the overpayment (20 CFR 404.506(a), 404.507; and 404.510a);**

5

3:18-cv-00380-LAB-KSC

When the claimant applied for Title II benefits on November 9, 2007, the claimant attested to his inability to work and obligation of his duty to notify the Administration of any work activity (Exhibit 1/6).

After his award of disability commencing on January 26, 2008, he was again notified of his affirmative duty to notify the Administration of any work activity.

As determined above, the claimant never stopped working after he was awarded disability benefits. He failed to report the earnings of $55,132.00 in 2008 and $58,767.00 in 2009. Instead of acknowledging the work activity, the claimant denied any work activity since November 9, 2007, in a Work Activity Report dated February 24, 2012 (Exhibit 38/3-7). In a signed Statement (form SSA-795), he denied earnings since November 2007, including from self- employment; he contended that the earnings belonged to his wife (Exhibit 311). Based on the claimant's signed representations, his benefits were continued.

In a subsequent review of the claimant's work record, the Administration determined that the action to remove the claimant's 2008 and 2009 earnings was incorrect because the claimant returned to work within one year of becoming disabled (Exhibit 26). The Administration requested that the claimant submit his 2008 and 2009 Federal Tax returns to show that they had been amended to remove the self-employment earnings that he claimed were incorrectly attributed to him. The claimant has refused to submit the requested tax returns. Instead, information from the IRS showed that for tax years 2008 and 2009 the claimant had not amended his tax returns to remove the self-employment earnings (Exhibits 25 and 27).

The claimant is not without fault in causing the overpayment based on his repeated denials that he had any earnings in 2008 and 2009 as well as his failure to amend the tax returns for those years.

3. **Recovery of the overpayment is not waived, and the claimant is liable for repayment of $144,359.50 during the period May 1, 2008 to January 1, 2016 (20 CFR 404.506);**

4. **The determination awarding disability insurance benefits was appropriately reopened (20 CFR 404.988(c)(1));**

> A Title II application may be reopened at any time if it was obtained by fraud or similar fault (20 CFR 404.988(c)(l)).
>
> The Administration reopened the favorable determination dated January 26, 2008, because there was a legitimate concern by the Administration to believe that fraud or "similar fault" was involved in his application for his Title II benefits.
>
> The claimant has repeatedly and adamantly denied throughout the record and his testimony about his work activity in 2008 and 2009. Even when confronted with his tax returns for 2008 and 2009 that show his substantial earnings, he has continued to deny these earnings. When given the opportunity to amend his tax returns, he has failed to do so. The undersigned finds that there is sufficient evidence in the record to demonstrate that the claimant has knowingly made incorrect or incomplete statements that are material to the determination of disability that underscore a finding of "similar fault" (SSRl 6-1p).
>
> Based on the above, the Administration appropriately reopened and revised the favorable determination dated January 26, 2008.
>
> **5. The claimant's disability insurance benefits was appropriately terminated.**
>
> The Administration's decision to terminate the claimant's disability insurance benefits was appropriate because the claimant was not entitled to Title II benefits based on disability since he engaged in substantial gainful activity during the waiting period and that there was no continuous 12 month period in which the claimant did not engage in substantial gainful activity (20 CFR 404.1520(b) et seq.).

*Id.*, pp. 16-18.

## IV. JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3), which provides for judicial review of the Commissioner's final decision. In addition to challenging the Commissioner's decision, plaintiff seeks monetary damages and other relief, alleging defendant engaged in a myriad of due process violations and otherwise violated his civil and statutory rights in the course of administering his claim. See Doc. No. 1, pp. 2-3, p. 5. This case, however, is a civil action for review of defendant's

final decision with respect to plaintiff's application for benefits and, as such the Court's jurisdiction is by statute limited to review of the certified administrative record. See § 405(h) ("…No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.); See also *Schweiker v. Chilicky*, 108 S. Ct. 2460, 2466-2471 (1988) (holding the improper denial of disability benefits due to alleged due process violations cannot give rise to a cause of action for money damages against the Commissioner.)

## V. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012); *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990) (Commissioner's decision not to waive overpayment "should be affirmed if supported by substantial evidence and if the Secretary applied the proper standard."). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate ... determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### *Legal Standards for Overpayment*

The Social Security Act authorizes the recovery of disability benefit payments made as a result of an overpayment. The Commissioner bears the burden of proving the fact of overpayment by substantial evidence. *McCarthy v. Apfel*, 221 F.3d 1119, 1124–25 (9th Cir. 2000). Thus, "[t]o recover overpayments, the Commissioner must show that the claimant actually received benefits beyond the period of disability or in excess of the correct amount." *Id.* at 1124 (citing 42 U.S.C. § 404(a)). The Commissioner must establish: "(1) that [the claimant] received Title II disability benefits [for the designated period]; (2) that these benefits were in excess of the amount to which [the claimant] was entitled; and (3) that the overpayment was in the amount [alleged]." *Id.* at 1124–25.

The Social Security Act authorizes the recovery of the overpayment by decreasing future payments to which the claimant is entitled or requiring a refund:

> With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds ..., or shall apply any combination of the foregoing.

42 U.S.C. § 404(a)(1)(A). Upon determining that an overpayment has been made, the SSA's practice is "to notify the recipient of that determination, and then to shift to the recipient the burden of either (i) seeking reconsideration to contest the accuracy of that determination, or (ii) asking the [Commissioner] to forgive the debt and waive recovery...." *Califano v. Yamasaki*, 442 U.S. 682, 686 (1979).

The Social Security Act provides for waiver of overpayments if "(1) a claimant is without fault in receiving the payment and (2) requiring repayment would either defeat the

purposes of Title II or would be against equity and good conscience." *Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990); 42 U.S.C. § 404(b). The fault inquiry is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the [plaintiff] and the peculiar circumstances of his situation." *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir. 1977) aff'd in part, rev'd in part on other grounds by *Califano*, 442 U.S. 682 (1979). Under the applicable regulations, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following: "(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507(a)-(c); see also *McCarthy*, 221 F.3d at 1126. Plaintiff has the burden of proving that he was without fault. See *McCarthy*, 221 F.3d at 1129.

## VI. DISCUSSION

Plaintiff contends the ALJ erred in failing to consider all the evidence, including his earnings records for 2008 and 2009, in reaching his decision. Doc. No. 28, pp. 28-30; Doc. No. 33, pp. 6–10 of 16.[5] Defendant rebuts these arguments and contends that summary judgment should be granted in its favor because the ALJ's findings are supported by substantial evidence.

---

[5] Plaintiff's Motion also includes an argument that the AR is incomplete because it is missing "an unknown amount of various documents." Doc. No. 22, p. 26 ¶ 61. Specifically, he claims documents identified on lines 3, 4, 5, 8 and 9 of AR 622 are missing from the AR. *Id*. The Court has conducted a thorough review of the briefs and AR and has not identified any missing documents. The documents identified by plaintiff as having been omitted from the AR can be found in the following locations:

    Items 3 & 4 – AR, pp. 655-56;
    Item 5 – AR pp. 657-59;
    Item 8 – AR, p. 664; and
    Item 9 – AR, p. 665.

The ALJ's determination that plaintiff was overpaid disability benefits rested primarily on his rejection of plaintiff's claim that he had no earned income during 2008 and 2009 in favor of the evidence of the IRS records. Defendant argues that because both the IRS and SSA earnings records show plaintiff earned $55,132 in 2008 and $58,767 in 2009, substantial evidence exists to uphold defendant's final decision. Doc. No. 30, p. 5-6. Specifically, defendant states:

> Consistent with the IRS records, the agency's own earnings records for Plaintiff showed income of $55,132.00 in 2008 and $58,767.00 in 2009 (AR 167, 519). The agency's earnings records provide conclusive evidence of a claimant's earnings. See 20 C.F.R. § 404.803. Therefore, because the agency's records showed that Plaintiff earned over $50,000 in 2008 and in 2009, and because IRS records showed the same thing, substantial evidence supported the ALJ's finding that Plaintiff actually earned this level of income in those years. The Court should defer to the ALJ's reasonable reliance on the official records of two federal agencies for his finding.

*Id.* Defendant's argument is circular. First, the information contained in the "official records of two federal agencies" is derived from the same source, the IRS, because the SSA conformed its own records to match those of the IRS. Doc. No. 30, p. 6, fn. 3. Additionally, although the Commissioner's records may be conclusive evidence of earnings, defendant fails to note the presumption codified in 20 C.F.R. § 404.803 (c)(1) has exceptions. Of note, two such exceptions are circumstances that plaintiff alleges exist here: 1) when the SSA records are based on incorrect tax returns; and 2) when the SSA records are incorrect because they reflect earnings for the wrong person. 20 C.F.R. § 404.882(b) & (e)(4). The Court, therefore, will not begin and end its review of the ALJ's decision with the IRS records and will review the entirety of the record.

Plaintiff explained, both during the hearing and in multiple writings, that he had no earned income during 2008 and 2009 and that the income amounts reflected in the IRS records for his social security number actually were those of his ex-wife. The ALJ found plaintiff's denial of the reported earnings unpersuasive for several reasons. First, the ALJ relied on the IRS records themselves. AR., p. 16, citing Exhibit 27/8 [AR, p. 142]. Second,

the ALJ relied on plaintiff's admission in a July 2014 letter that he helped his ex-wife with her business, Temecula Valley Computers, contributing his knowledge to help her establish the business and hire qualified individuals to work for the business. AR, p. 16, citing Exhibit 11/2 [AR, p. 76]. Third, the ALJ relied on plaintiff's failure to correct or amend his 2008 and 2009 tax returns to remove the earnings of $55,132.00 and $58,767.00, respectively, from his Social Security Number for those years. AR, p. 16, citing Exhibits 20/2, 25, 27 [AR 104, 123, 135-44]. As such, the ALJ found the record "uncontroverted" that plaintiff was self-employed in 2008 and 2009 and had these substantial earnings. AR, p. 17.

An ALJ's assessment of credibility must be given great weight, so long as it is supported by substantial evidence. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *Hudson v. Bowen*, 849 F.2d 433, 434 (9th Cir.1988). Here, the ALJ erred in relying on the letter plaintiff drafted in July 2014 in which he describes how he helped his wife with Temecula Valley Computers. The subject of that letter was plaintiff's income in 2010 and 2011 so comments he made about his involvement with her business during those years can not fairly be used to discredit his statements about the status of his employment in 2008 and 2009. AR, pp. 76-77.[6] Additionally, the ALJ's characterization of a "failure" on the part of plaintiff to correct or amend his 2008 and 2009 tax returns ignores plaintiff's testimony that he is time-barred from filing an amended tax return for those years.

Lastly, although an ALJ has no obligation to accept a claimant's unsubstantiated denials over the evidence of the record, here the record includes evidence that substantiates plaintiff's argument but was not discussed by the ALJ or considered by the Appeals Council before it the Commissioner's final determination was made. Plaintiff has

---

[6] The record indicates Temecula Valley Computers likely did not even exist in 2008. Plaintiff has stated it was created in 2010 (See e.g. AR, p. 618) and record contains a copy of plaintiff's ex-wife's linkedin profile, in which she represents she owned Temecula Valley Computers from 2009-2013 (AR, pp. 566-67).

repeatedly represented his ex-wife was the sole income earner for his family after he applied for benefits. To corroborate his testimony that she supported their family with income derived from two self-owned companies, plaintiff produced a copy of a business license his ex-wife obtained in November 2007, the same month plaintiff applied for disability benefits, for a company called The Morgan's Place, which offered website design, hosting, IT consulting and computer maintenance and repair services. AR, pp. 560-561. Two months later, in January 2018, she made a fictitious business name filing and obtained a business license for Tazer Guns Direct, also consistent with plaintiff's testimony. AR, pp. 556-59. Additionally, among the documents that were accepted into the record after the ALJ's decision was rendered, but before the Commissioner's decision was final, are IRS Account Transcripts, which corroborate plaintiff's explanation that he and his ex-wife filed joint tax returns in 2008 and 2009. AR, pp. 625-30. Like the IRS documents reviewed by the ALJ, these records reflect that plaintiff had taxable earned income totaling $55,131 in 2008 and $58,675 in 2009. AR, pp. 623 & 625. However, unlike the IRS records the ALJ referenced, these transcripts also reflect his ex-wife earned nothing in either 2008 or 2009, a fact that is both consistent with plaintiff's representation the IRS records are incorrect and, if true, somewhat surprising given that she purportedly owned and operated two businesses during this time. Thus, when viewing the record on the whole, it is evident the ALJ's rejection of plaintiff's testimony regarding his earnings, or lack thereof, for 2008 and 2009 is not supported by substantial evidence.

### *Remand is Appropriate*

Plaintiff asks the Court to compel defendant to change plaintiff's earnings records, reinstate his benefits, and perform various other actions. Doc. No. 28, pp. 33-34. These requests exceed the jurisdiction of the Court under 42 U.S.C. § 405(g).

The Court has found reversible error at the first step of the ALJ's inquiry. A more comprehensive review of the record at this step could affect the findings made regarding whether plaintiff was at fault for the overpayment and, if so, whether the determination awarding disability insurance benefits was appropriated reopened. Thus, the proper remedy

| | |
|---|---|
| 1 | is a remand for further administrative proceedings to allow defendant, the congressionally-delegated finder of fact, to further develop the record and make proper findings regarding whether plaintiff was, in fact, overpaid and, if so, whether he was at fault for the overpayment and, if so, whether the determination awarding disability insurance benefits was appropriated reopened. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (noting that where the reviewing court cannot uphold an administrative agency decision, the proper case, except in rare circumstances, is to remand to the agency for additional investigation or explanation); see also *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (same). |

## VII. CONCLUSION

This Report and Recommendation is submitted to the Honorable Larry A. Burns, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). For the reasons set forth above, plaintiff's Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART, defendant's Cross-Motion for Summary Judgment should be DENIED, and the claim should be remanded for further administrative proceedings consistent with this Report and Recommendation.

Any party may file written objections with the Court and serve a copy on all parties on or before **February 25, 2019**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **March 4, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the Court's decision. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: February 11, 2019

_____
Hon. Karen S. Crawford
United States Magistrate Judge